

## NUMBEPR 13-24-00453-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

### IN THE INTEREST OF J.T., A.P., L.P., CHILDREN

---

### ON APPEAL FROM THE COUNTY COURT AT LAW NO.5
### OF NUECES COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Memorandum Opinion by Justice West**

Appellant P.P. Jr. (Father) appeals a judgment terminating his parental rights to his son, L.P.[1] Father argues that the evidence is insufficient to support: (1) the statutory termination grounds, and (2) that termination was in the child's best interest. We affirm.

### I.    BACKGROUND

**A.    Pretrial Proceedings**

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, parents and children are referred to by their initials or an alias. *See* TEX. FAM. CODE ANN. § 109.002(d).

According to an affidavit in support of emergency removal, on November 14, 2022, appellee, the Department of Family and Protective Services (the Department), received a report with concerns for neglectful supervision of two-year-old A.P. and his newborn sibling, L.P. The report alleged that Father and Mother (K.P.) leave A.P. and L.P. "with an unknown caregiver while both parents are out using drugs together." A subsequent report on November 22, 2022, included allegations that Mother "has been using opiates, Xanax, and Lortabs daily and abusing alcohol on the weekends in the presence of the children."

On December 5, 2022, friends of Mother brought A.P. to Driscoll Children's Hospital after they observed him acting strangely. At the hospital, A.P. tested positive for amphetamines and ecstasy and "appeared to be high from drug exposure." L.P., who was about three months old at the time, was later brought to the hospital and tested positive for cocaine. L.P. was "observed to have rapid breathing and shaky legs which nursing staff stated was indicative of withdrawals." When speaking to a Department investigator, Mother "appeared to be under the influence" because her "speech was accelerated and slurred," "she struggled to answer questions[,] and was frequently repeating words."

The removal affidavit included the couple's history with the Department. It indicated that Mother was validated for neglectful supervision of one of her children every year from 2016 to 2021, including A.P. in September 2020 and July 2021. On February 1, 2021, the Department validated both parents for neglectful supervision of A.P. because Father tested positive for cocaine; Mother tested positive for cocaine, amphetamines, methamphetamines, and opiates; and Mother's fourteen-year-old son, unrelated to Father, was allegedly using drugs. On February 9, 2022, the Department received a report that Father and Mother "engaged in a domestic dispute" and "ha[d] a history of

2

ongoing domestic violence." The affidavit also included a summary of the couple's criminal histories, indicating that Father and Mother had multiple criminal charges dating back to 2002 and 2003, respectively, and that Father had two prior convictions for drug possession.

The trial court awarded the Department temporary managing conservatorship of A.P. and L.P. Father alleged to be the father of both A.P. and L.P., but a court-ordered paternity test established that A.P. was not his biological son.[2]

## B.    Trial Record

The case proceeded to a bench trial starting on March 18, 2024. Natalie Canales-Luevano, a Department specialist, testified that she met with Father to establish a family plan of service. The plan required Father to attend and complete parenting classes, substance abuse counseling, individual counseling, a psychological evaluation, domestic violence intervention and prevention classes, and submit to randomized drug testing. To complete his substance abuse counseling, Father was mandated to attend sixteen individual substance abuse classes and thirty-six hours of group therapy. Father signed the plan on January 18, 2023, and the court adopted it as an order.

Canales-Luevano testified that Father failed to complete the psychological evaluation, parenting classes, domestic violence intervention and prevention classes, and individual counseling sessions. As to substance abuse counseling, Canales-Luevano testified that Father completed only six individual sessions and one group session. Out of

---

[2] J.T., a child originally in this proceeding, is not Father's biological child and was later severed out of this case.

sixty-four randomized drug screenings the Department requested, Father submitted to twenty-four, with four testing positive:

- On December 13, 2022, Father's hair follicle screening tested positive for cocaine and methamphetamine.

- On January 9, 2023, Father's urinalysis (UA) screening tested positive for hydromorphone and hydrocodone.

- On November 1, 2023, Father's hair follicle screening tested positive for amphetamine and methamphetamine.

- On February 3, 2024, Father's UA screening tested positive for amphetamine and methamphetamine.

As to Father's relationship to L.P., Canales-Luevano testified that she did not believe they were bonded. Prior to removal, Father told her "he had a very back and forth relationship" with Mother, he was not taking care of A.P. and L.P., and he only saw them when Pam, his nineteen-year-old daughter from a prior relationship, babysat them. Canales-Luevano testified that from her understanding, Pam spent more time caring for A.P. and L.P. than Father did. She also testified that Father visited A.P. and L.P. frequently for three months after removal, but he had not visited either child for a year.

At the time of trial, L.P. was living in a licensed foster home with parents R.R. and D.R., where he had been placed about two months after removal. Canales-Luevano testified that L.P. "has a great bond" with R.R. and D.R., "[h]e refers to them as Mom and Dad," and "[h]e has blossomed in being in their care since he was first placed." R.R., an intervenor in this case, clarified that prior to removal, A.P. was raised primarily by her family because Mother left A.P. in her care shortly after he was born. R.R. testified that

4

Mother only became involved with A.P. when everyone in R.R.'s family went to work. Prior to removal, R.R. discussed potentially adopting A.P., but Mother did not want to voluntarily terminate her parental rights. After the children were removed from Mother's care, R.R. made plans to adopt both A.P. and L.P.[3] She testified that she was "never under the impression" that Father was L.P.'s biological father, and she never knew that Father alleged to be A.P.'s father.

Darra Walker, an advocate supervisor for the Court Appointed Special Advocates (CASA) of the Coastal Bend, became involved with A.P.'s and L.P.'s case in January 2024. Walker explained that CASA's role is to represent the "best interest[s] of the children." She believed that it was in the children's best interest to terminate Father's parental rights and for the children to remain with their foster family. However, she later testified that she was not comfortable recommending termination because she believed that "outside interference . . . may have hindered reunification" and recommended that L.P. have a continuing or fostered relationship with Father's family. Nevertheless, Walker did not recommend reunification with Father and testified that termination "seems reasonable."

The trial court signed an order terminating Father's parental rights pursuant to Texas Family Code § 161.001(b)(1)(D), (E), (N), and (O). The trial court further found that termination of Father's parental rights was in L.P.'s best interests. *See id.* § 161.001(b)(2). This appeal ensued.

---

[3] On April 14, 2023, Mother voluntarily relinquished her parental rights to both children.

## II. SUFFICIENCY OF THE EVIDENCE

## A.    Standard of Review & Applicable Law

"Because the natural right between a parent and his child is one of constitutional dimensions, *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985), termination proceedings must be strictly scrutinized." *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). In parental termination cases, our legal and factual sufficiency standards honor this elevated burden of proof while respecting the factfinder's role. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018) (citing *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002)). "The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *Id*. In a legal sufficiency review, we "cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding." *Id*. at 630–31 (citing *In re J.F.C.*, 96 S.W.3d at 266). Thus, "[e]vidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631 (citing *In re J.F.C.*, 96 S.W.3d at 266).

Factual sufficiency, on the other hand, requires us to weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d at 631. We "must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)). Therefore, "[e]vidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of

6

a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id*. (citing *In re J.F.C.*, 96 S.W.3d at 266).

To terminate parental rights, a court must find two elements by clear and convincing evidence: (1) that the parent committed one of the statutory grounds for termination found in § 161.001(b)(1) of the family code; and (2) that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). Because of the fundamental rights at issue, due process requires that parental termination be supported by clear and convincing evidence. *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014); *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *see also In re J.F.C.*, 96 S.W.3d at 264.

## B.  Statutory Grounds

In his first issue, Father argues there is legally and factually insufficient evidence supporting each termination ground. "To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d 230, 232–33 (Tex. 2019) (per curiam). The Texas Supreme Court has held that, regardless of whether other grounds for termination are unchallenged on appeal, an appellate court must always review issues alleging the evidence was insufficient to support findings of endangerment under parts (D) or (E) of § 161.001(b)(1) of the family code. *Id.* at 234, 237; *see also In re X.J.R.*, No. 04-20-00368-CV, 2021 WL 112175, at *3 (Tex. App.—San Antonio Jan. 13, 2021, pet. denied) (mem. op.) ("Because

7

grounds (D) and (E) implicate due process and due course of law requirements, we 'must provide the details of [our] analysis' for either of these grounds which we affirm." (quoting *In re N.G.*, 577 S.W.3d at 237)). Therefore, we will first address the sufficiency of the evidence supporting the trial court's (D) and (E) findings.

### 1.    (D) & (E) Grounds

Subsection 161.001(b)(1)(D) allows termination when the evidence proves by clear and convincing evidence that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the child's physical or emotional well-being, and subsection 161.001(b)(1)(E) allows termination if the parent has engaged in conduct, or knowingly placed the child with persons who engage in conduct, which endangers the child's physical or emotional well-being. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). "Subsection (D) addresses *the child's surroundings and environment rather than parental misconduct*, which is the subject of subsection (E)." *In re A.L.H.*, 624 S.W.3d 47, 56 (Tex. App.—El Paso 2021, no pet.) (quoting *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.)). Subsection (D) permits termination based on only a single act or omission. *In re V.A.*, 598 S.W.3d 317, 329 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). In contrast, subsection (E) requires evidence of a "voluntary, deliberate, and conscious course of conduct by the parent" and generally more than a single act or omission. *In re D.L.W.W.*, 617 S.W.3d 64, 78 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quoting *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)).

Under both subsection (D) and (E), "'endanger' means to expose the child to loss or injury or to jeopardize her emotional or physical health." *Id.* (citing *Tex. Dep't of Human*

8

*Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re G.C.S.*, 657 S.W.3d 114, 128 (Tex. App.—El Paso 2022, pet. denied) (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)); *see also Boyd*, 727 S.W.2d at 533. "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well[-]being of a child." *In re S.A.*, 665 S.W.3d 59, 70 (Tex. App.—Tyler 2022, pet. denied) (citations omitted).

### 2.    Analysis

Father argues that there was insufficient evidence that he "knowingly allowed [L.P.] to remain in conditions or surroundings which endangered his physical or emotional well-being." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). He argues that the Department failed to present evidence that L.P. "was living in a dangerous condition" or that Father was aware of L.P.'s current living conditions.

Endangering conduct may include the parent's actions before the child's birth and the parent's conduct with older children. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (citing *Boyd*, 727 S.W.2d at 533). Father's conduct prior to L.P.'s birth, including Father's care of A.P. and any conditions or surroundings which endangered A.P.'s physical or emotional well-being, was relevant in this case, particularly because L.P. was only about three months old at the time of removal. *See id.*; *In re I.G.*, 383 S.W.3d 763, 770 (Tex. App.—Amarillo 2012, no pet.) ("If a parent abuses or neglects the other parent or a child, that conduct can be used to support a finding of endangerment even against a child who was not yet born at the time of the conduct." (citation omitted)).

9

There was sufficient evidence that L.P. was living in conditions or surroundings which endangered his physical or emotional well-being. The Department received reports that Mother was "using opiates, Xanax, and Lortabs daily and abusing alcohol on the weekends in the presence of the children"; it learned that Father and Mother leave A.P. and L.P. "with an unknown caregiver while both parents are out using drugs together"; and A.P. and L.P. tested positive for drugs at the hospital. *See In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection D." (citation omitted)).

While Father claims he was not caring for A.P. or L.P. prior to removal, there was sufficient evidence that he "knowingly" left the children in these conditions. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Evidence at trial established that Father had an "on and off again" relationship with Mother, the couple had a history of domestic violence, the couple used drugs together, and the couple engaged in neglectful supervision of A.P. due to drug use. *See id.*; *In re J.O.A.,* 283 S.W.3d at 346 (concluding that father's history of domestic violence and drug use constituted "evidence of endangerment on which a reasonable factfinder could have formed a firm belief or conviction of endangerment"). Mother has an extensive history with CPS and was validated for neglectful supervision of A.P. and her other children multiple times prior to this case, and Father continued to allow the children to reside in her care. *See In re S.R.,* 452 S.W.3d at 360.

Father next argues that there is insufficient evidence to support the predicate grounds for termination under subsection (E) because "the Department failed to show

10

that [he] engaged in a course of conduct that endangered [L.P.] physically or emotionally," or that he "knew of dangerous conditions created by [Mother]," or knowingly placed the children "with dangerous persons." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

As previously stated, Father and Mother used drugs together, had a history of domestic violence, and had previously been validated for neglectful supervision of A.P. There was sufficient evidence for a factfinder to infer that Father knew of Mother's substance abuse issues and past neglectful conduct of her children, and he consciously disregarded those concerns when he when he left his child in Mother's care. *See id.*; *In re S.R.*, 452 S.W.3d at 360 ("A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards.").

Additionally, there was sufficient evidence of Father's separate conduct that endangered the child's physical and emotional well-being. "Because the inquiry under both subsections D and E includes the conduct of the parent, evidence of criminal conduct, convictions, or imprisonment is relevant to a review of whether a parent engaged in a course of conduct that endangered the well-being of the child." *In re S.R.*, 452 S.W.3d at 360–61 (citation omitted).

Father has two prior drug possession convictions and a history of domestic violence. Father has a history of substance abuse dating back to 2002. "[A] parent's use of narcotics and its effect on his ability to parent may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d at 345. "Continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct." *In re S.R.*, 452 S.W.3d at 361–62 (citation omitted). Father used illegal substances prior to removal and continued to use

11

drugs during the pendency of this case. Father tested positive four times for different types of drugs between December 2022 to February 2024. And, a factfinder could reasonably infer that his failure to submit to other requested drug screenings indicated that he was using illegal drugs. *See In re A.R.D.*, 694 S.W.3d 829, 840 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) ("A fact[]finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs." (citation omitted)).

Further, Father did not participate in a material portion of the family plan of service. "A failure to complete a court-ordered service plan may constitute evidence supporting an endangerment finding because such conduct subjects a child to instability and uncertainty, which endangers the child." *Id.* Specifically, Father failed to complete the psychological evaluation, parenting classes, domestic violence intervention and prevention classes, individual counseling sessions, the requisite number of substance abuse counseling sessions, and submitted to less than half of the random drug screenings requested.

There was also evidence that L.P. had not developed a bond with Father. "The parent-child relationship, and efforts to improve or enhance parenting skills, are relevant in determining whether a parent's conduct results in endangerment under subsection (E)." *A.S. v. Tex. Dep't of Fam. & Protective Servs.*, 394 S.W.3d 703, 712 (Tex. App.—El Paso 2012, no pet.) (citing *In re D.T.*, 34 S.W.3d 625, 640 (Tex. App.—Fort Worth 2000, pet. denied). Father had not visited L.P. for an entire year prior to trial. *See id.*; *see also In re D.A.*, No. 02-15-00213-CV, 2015 WL 10097200, at *5 (Tex. App.—Fort Worth, Dec. 10, 2015, no pet.) (mem. op.) ("[T]he risk of emotional harm from a parent's missed visits with

12

a child may support a finding of endangerment." (citations omitted)). He did not appear for the first two days of trial, he did not testify, and he did not present evidence as to his current residence, employment, or plans for L.P.

Viewing all the evidence in the light most favorable to the trial court's (D) and (E) findings and considering undisputed contrary evidence, we conclude that a reasonable factfinder could form a firm belief or conviction that the findings were true. *See In re A.C.*, 560 S.W.3d at 634. Further, considering the entire record, including evidence both supporting and contradicting the trial court's findings, we conclude that the contrary evidence is not so overwhelming as to undermine the court's findings. *See id.* Because the evidence is legally and factually sufficient to support both endangerment grounds, we need not address the sufficiency of the evidence supporting the remaining grounds. *See In re N.G.*, 577 S.W.3d at 232–33. We overrule Father's first issue.

## C. Best Interest Finding

In Father's second issue, he argues there is legally and factually insufficient evidence supporting the trial court's best interest finding.

### 1. *Holley* Factors

There is a strong, though rebuttable, presumption that keeping a child with a parent is in the child's best interest. TEX. FAM. CODE ANN. § 153.131(b); *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In reviewing a best interest finding, we consider, among other evidence, the non-exclusive *Holley* factors. *In re E.N.C.*, 384 S.W.3d at 807 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). These factors include: (1) the child's desires; (2) the child's emotional and physical needs now and in the future; (3) any emotional and physical danger to the child now and in the future; (4) the parental abilities

13

of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.* The party seeking termination is not required to prove all nine *Holley* factors, and in some cases, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 25, 27 (Tex. 2002).

### 2. Analysis

As to the first *Holley* factor, when a child such as L.P. is too young to express his desires, the factfinder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re R.S.D.*, 446 S.W.3d 816, 818, 820 (Tex. App.—San Antonio 2014, no pet.) (finding that the child, who was "almost four years old" at the time of trial, was "too young to have stated his desires"). Evidence at trial showed that L.P., eighteen months old at the time of trial, was bonding with his foster family and spent minimal time with Father before and after removal.

As to the second *Holley* factor, there was evidence presented that L.P.'s current and future emotional and physical needs are being met at the foster home. Turning to the third *Holley* factor, there was no evidence that the foster family presents a current or future risk of emotional or physical damage to the child; however, Father's history of drug use, criminal conduct, abuse and neglect presents risk of emotional or physical damage to the

14

child. Regarding the fourth *Holley* factor, Father presented no evidence concerning his parenting abilities.

The fifth *Holley* factor addresses programs available to assist individuals seeking custody. The only evidence in this regard is that the Department offered several services that were designed to help Father promote the best interest of the child, but Father was unwilling or unable to successfully comply. *See In re O.N.H.*, 401 S.W.3d 681, 687 (Tex. App.—San Antonio 2013, no pet.) ("Non-compliance with a service plan is probative of a child's best interest." (citing *In re W.C.*, 98 S.W.3d 753, 765 (Tex. App.—Fort Worth 2003, no pet.)); *Wilson v. State*, 116 S.W.3d 923, 930 (Tex. App.—Dallas 2003, no pet.) (concluding that a parent's lack of motivation to learn how to improve parenting skills is evidence supporting the best interest determination).

As to the plans for the child by the individuals seeking custody, the sixth *Holley* factor, R.R. testified that she and her husband intended to adopt L.P. and his brother. The Department presented evidence that L.P.'s foster placement was a stable and loving environment. No plans for L.P.'s future were offered by Father. The seventh *Holley* factor, the stability of the home or proposed placement, was addressed with testimony that L.P. was bonding with the foster family. Again, Father presented no evidence regarding the stability of his home environment.

The evidence in support of termination in this case centers primarily on the eighth *Holley* factor, parent's improper acts or omissions indicating that the parent-child relationship is improper. Evidence established that Father had a substance abuse history dating back to 2002; he used illegal substances prior to removal and continued to use drugs during the pendency of this case; he used drugs with Mother; he was validated for

15

neglectful supervision of A.P. due to drug use in 2021; he had a history of domestic violence with Mother; he failed to visit with L.P. throughout the proceedings; and he failed to complete most of the requirements in the service plan.

Lastly, as to the ninth *Holley* factor, no relevant evidence was adduced to any excuses for the acts or omissions of Father.

Looking at all of the evidence in the light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that termination was in L.P.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re A.C.*, 560 S.W.3d at 630. Further, the evidence to the contrary was not so significant as to preclude such a finding. *See id.* at 631. We overrule Father's second issue.

### III. CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Delivered and filed on the
13th day of February, 2025.

16